## Elinor Lee *v.* Board of Education of the City of Bristol

Cotter, C. J., Loiselle, Bogdanski, Peters and Healey, Js.

Argued January 8—decision released June 3, 1980

*Joseph Rubin,* for the appellant (plaintiff).

*Thomas N. Sullivan,* with whom, on the brief, was *William R. Connon,* for the appellee (defendant).

ARTHUR H. HEALEY, J.   This case concerns the termination of a tenured teacher's contract of employment for cause under General Statutes § 10-151 (b).   The plaintiff, Elinor Lee, who had been employed by the defendant board of education of the city of Bristol (hereinafter the board) for over four years and, hence, had acquired tenure under General Statutes § 10-151 (b), was discharged by the board on August 30, 1974.   The plaintiff appealed from that decision to the Court of Common Pleas, which dismissed the appeal.   The appeal to this court followed.

The relevant facts are not in dispute:   On April 1, 1974, the plaintiff was informed by the superintendent of schools that the termination of her teaching contract was being considered by the board for inefficiency and insubordination against reasonable rules of the board of education. On April 18, 1974, the plaintiff was notified of the specific charges made against her,[1] and, on August 21, 1974, pursuant to the plaintiff's request, a hearing was held at which the plaintiff was present and represented by counsel.   At the hearing, the plaintiff was given full opportunity to cross-examine witnesses called by

---

[1] Those charges were:   (1) She had been late for work almost every week and had failed to heed "instructions" from her superiors concerning this tardiness; (2) she had missed work assignments at least once a week; (3) she had kept pupils in at recess and after school contrary to "instructions" of her superiors; (4) she had left her classroom unattended to make personal phone calls; (5) she had been warned on March 26, 1974, concerning speeding in the school parking lot; and (6) she had caused a number of transfer requests from parents upset by her "unorthodox teaching method."

the board and to produce evidence. The hearing was held before three members of the board, which, at the time of the hearing, was then comprised of five members.[2] A transcript was made of the hearing, which was examined by the two members of the board who were not present at the hearing. The decision to terminate was made by four members of the board, two of whom had not been present at the hearing but had read the transcript.

On appeal, the plaintiff claims that the trial court erred in the following respects: (1) in concluding that the board's failure to state the reasons for its decision or the evidence upon which it relied did not deprive the plaintiff of due process of law; and (2) in concluding that the hearing was conducted during a valid meeting of the board. This last claim is two-pronged: the plaintiff argues that there was no quorum present at the meeting at which the hearing took place, and that the meeting was unlawful because, although it was an emergency meeting, no adequate explanation of the emergency was given.

I

The fourteenth amendment to the United States constitution prohibits any state[3] from depriving any person of "life, liberty, or property, without due process of law." Article one, section eight of our state constitution contains the same prohibition and

---

[2] The charter of the city of Bristol authorizes a board of education consisting of six members. At the time of the meetings involved in this case, there existed one vacancy on the board.

[3] There is no question but that the action of a local board of education constitutes "state action" for purposes of the federal constitution. See *Terry* v. *Adams*, 345 U.S. 461, 473, 73 S. Ct. 809, 97 L. Ed. 1152 (1953) (Frankfurter, J., concurring); *Murphy* v. *Berlin Board of Education*, 167 Conn. 368, 372, 355 A.2d 265 (1974); *West Hartford Education Assn., Inc.* v. *DeCourcey*, 162 Conn. 566, 573, 295 A.2d 526 (1972).

is given the same effect as the fourteenth amendment to the federal constitution. *Miller* v. *Heffernan,* 173 Conn. 506, 516, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978). Our analysis of the plaintiff's claim, therefore, encompasses both provisions.

The property interests protected by the due process clause are diverse and may take many forms. *Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). A teacher who is given by statute the right to continued employment except upon a showing of cause or the bona fide elimination of his position; see General Statutes § 10-151 (b); acquires a property right that is entitled to protection under the due process clause.[4] See *Slochower* v. *Board of Education,* 350 U.S. 551, 556, 76 S. Ct. 637, 100 L. Ed. 692 (1956); cf. *Connell* v. *Higgenbotham,* 403 U.S. 207, 208, 91 S. Ct. 1772, 29 L. Ed. 2d 418 (1971). Thus, the plaintiff had a "legitimate claim of entitlement" to the continuance of her teaching contract that was protected by the state and federal constitutions. See *Board of Regents of State Col-*

---

[4] Even a nontenured teacher may have a liberty interest consisting of his reputation or honor that entitles him to due process protection upon his threatened termination for cause. *Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). In *Bishop* v. *Wood,* 426 U.S. 341, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976), which involved the discharge of a public employee, the Supreme Court found that, on the facts of that case, because no property interest in continued public employment was created by a state statute, none was recognized by the due process clause; and that, because there was no public disclosure of the reasons for the discharge, no liberty interest was affected. For a discussion of this case and its ramifications see Rabin, "Job Security and Due Process: Monitoring Administrative Discretion Through a Reasons Requirement," 44 Univ. Chi. L. Rev. 60; note, "Democratic Due Process: Administrative Procedure After *Bishop* v. *Wood,*" 1977 Duke L.J. 453.

*leges* v. *Roth,* supra, 577–78; *Goldberg* v. *Kelly,* 397 U.S. 254, 261–62, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); cf. *Bishop* v. *Wood,* 426 U.S. 341, 347, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976).

Once a property interest protected by the due process clause is found to exist, the inquiry is directed to the type of procedure mandated by the constitutional prohibitions. The procedure that is due in any given case depends upon the extent to which a person is "condemned to suffer grievous loss." *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, 168, 71 S. Ct. 624, 95 L. Ed. 2d 817 (1951) (Frankfurter, J., concurring); see *Goldberg* v. *Kelly,* supra, 262–63. " ' "Due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Cafeteria Workers* v. *McElroy,* 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961). Instead, due process is a flexible principle that "calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); see *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 610, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974). The United States Supreme Court has stated with greater specificity the factors to be considered in deciding what process is due: "[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge,* 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ; see Tribe, American Constitutional Law § 10-13. The loss with which the plaintiff is threatened is substantial. See *Delagorges* v. *Board of Education,* 176 Conn. 630, 636, 410 A.2d 461 (1979). Not only is her teaching position her livelihood and a vital source of income, the charges against her, which reflect upon her professional competence and character, implicate her interest in liberty protected by the due process clause of the fourteenth amendment. *Board of Regents of State Colleges* v. *Roth,* supra, 572–73. In view of the substantial interest at stake, we examine the procedures employed to determine whether they comport with the basic principles of due process embodied in our state and federal constitutions.

At the outset, we must determine what statutes were applicable to the plaintiff's termination in 1974. The Uniform Administrative Procedure Act (UAPA) ; General Statutes §§ 4-166 through 4-189; which was enacted in 1971 and became effective in January, 1972; Public Acts 1971, No. 854; contained a broad definition of "agency."[5] In *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 355 A.2d 265 (1974), this court considered the scope of the UAPA and concluded that local boards of education were included within the term "state board" used in General Statutes § 4-166 (1) as originally enacted. Id., 373. That determination was based upon "the absence of any indication to the contrary

[5] Public Acts 1971, No. 854 § 1 (1) provided: " 'Agency' means each state board, commission, department or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases."

in the statute itself, its legislative history, or our cases." Ibid. That the legislature intended the UAPA to establish a single uniform procedure for administrative agencies covered by the act is evidenced by the broad language of § 4-189 repealing "[a]ny provisions in the general statutes which are inconsistent with [the act]." In *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 445, 363 A.2d 103 (1975), we held that § 4-189 repealed an inconsistent judicial review provision of the State Personnel Act. General Statutes §§ 5-193 through 5-269.

In 1975, after the decision in *Murphy,* however, the legislature amended General Statutes § 4-166 (1) by adding to those persons and bodies expressly excluded from the definition of "agency" any "town or regional board of education." See Public Acts 1975, No. 75-529 § 2. That this amendment reflects the legislature's intended scope of the original definition is apparent from the remarks of Representative James T. Healey, the bill's sponsor. Representative Healey remarked that the amendment was necessary because town and regional boards of education, although local bodies, "are regarded, for certain purposes, as being arms of the State government insofar as they are charged with duty concerning education." See 18 H. R. Proc., Pt. 13, 1975 Sess., p. 6322. "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); see Sutherland, Statutory Construction (4th Ed.) §§ 22.31, 22.35. We consider the 1975 amendment as construing and clarifying the original scope of § 4-166 (1) and, therefore, a legislative declaration

of the meaning of the original act. We reach this conclusion for several reasons: it was not readily apparent that local or regional boards of education would constitute state boards or agencies under the UAPA as originally enacted; subsections (b) and (f) of § 10-151, the Teacher Tenure Act, regulating procedures that are inconsistent with the UAPA were never repealed; and our decision in *Murphy* was based on the absence of any legislative history or expression to the contrary which, because of the 1975 amendment, is not now the case. Thus, we conclude that the Teacher Tenure Act, and not the UAPA, applies to this case.[6]

We now examine the applicable provisions of the Teacher Tenure Act to determine whether they comply with the modicum of due process required by our state and federal constitutions. The plaintiff does not challenge the sufficiency of the notice and hearing requirements of General Statutes § 10-151 (b). The record discloses that the plaintiff was afforded adequate notice of the charges made and that the hearing held pursuant to § 10-151 (b), at which the plaintiff was represented by counsel, presented evidence and cross-examined witnesses, complied with the constitutional safeguards.[7] Her single claim in this regard is that the board's failure to state the reasons for its decision and the evidence upon which it relied deprived her of due process of

[6] We reach this conclusion notwithstanding the language of *Adamchek* v. *Board of Education*, 174 Conn. 366, 369, 387 A.2d 556 (1978), because in *Adamchek* the legislative history of the 1975 amendment as well as the other factors we have alluded to above were not considered.

[7] We also note that teachers in this state have access to "supervisory records and reports of competence, personal character and efficiency" that are maintained in personnel files relating to their employment by the local or regional boards of education. General Statutes § 10-151a.

law. General Statutes § 10-151 does not specify the form or content of a termination decision of a board of education.[8] We must determine, therefore, to what extent the constitutional due process standard places a greater burden upon a board of education than that set out in § 10-151 (b).

In *Goldberg* v. *Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), the United States Supreme Court identified several elements of due process that must be part of the procedure employed by the state prior to its decision to terminate a welfare recipient's benefits.[9] The court concluded that the recipient is entitled to the following procedure: (1) timely and adequate notice detailing the reasons for a proposed termination; *Goldberg* v. *Kelly,* supra, 267–68; (2) a hearing before an impartial decisionmaker; id., 271; (3) the opportunity to confront and cross-examine adverse witnesses and to present evidence and argument; id., 268–70; (4) the right to be represented by counsel; ibid.; (5) a determination by the decisionmaker that rests solely on the legal rules and evidence adduced at the hearing, which, in turn, requires the decisionmaker to

---

[8] Where the board itself does not hold the hearing on termination and a panel of three persons does, as provided by General Statutes § 10-151 (b), that panel must "submit in writing its findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher." Although a three-member panel was not used here, it is clear from our holding today that unless the board expressly adopts the findings and reasons of the panel, the fact that the panel has made findings and a recommendation does not relieve the board of stating its reasons for acting as it did and the evidence upon which it relied.

[9] In reviewing these elements, it must be borne in mind that two hearings were anticipated under the facts presented in *Goldberg* v. *Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). The first is a preliminary, pretermination hearing; the second is a more formal post termination hearing. Id., 266–67.

"state the reasons for his determination and indicate the evidence he relied on." Id., 271. The court went on to state that at this preliminary hearing there was no need for the decision to be a "full opinion or even formal findings of fact and conclusions of law." Ibid.

The United States Supreme Court has also recognized a parolee's interest in continued liberty as protected by the due process clause. See *Morrissey* v. *Brewer,* 408 U.S. 471, 481–82, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Thus, his parole may initially be revoked only upon a preliminary determination of probable cause, and finally revoked upon a later hearing at which the following minimum requirements of due process were satisfied: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Id., 489. In *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), the Supreme Court held that the due process requirements established for parole revocation were also applicable to probation revocation proceedings.[10]  Cf. *Greenholtz* v. *Inmates of*

---

[10] The court in *Gagnon* v. *Scarpelli,* 411 U.S. 778, 790, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), added to the requirements set out in *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the right to counsel under certain circumstances.

*Nebraska,* 442 U.S. 1, 15, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (parole board need not specify the particular "evidence" upon which it relies in a determination not to grant parole). Even in prison disciplinary hearings, in which the prisoner is not afforded the right to confront and cross-examine the witnesses testifying against him, the due process clause requires the decisionmaker to prepare a written statement of the evidence relied on and the reasons for the action taken. *Wolff* v. *McDonnell,* 418 U.S. 539, 564–65, 567, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

Those decisions, and their underlying rationale, lead us to the conclusion that a tenured teacher discharged for cause under General Statutes § 10-151 (b) is entitled, as a matter of constitutional law, to a written statement of the decision reached, the reasons for the determination, and a fair summary of the evidence relied upon. Accord, *Staton* v. *Mayes,* 552 F.2d 908, 915–16 (10th Cir.), cert. denied, 434 U.S. 907, 98 S. Ct. 309, 54 L. Ed. 2d 195 (1977); *McGhee* v. *Draper,* 564 F.2d 902, 911 (10th Cir. 1977); cf. *Mauriello* v. *Board of Education,* 176 Conn. 466, 470–71, 408 A.2d 247 (1979) (decided on other than constitutional grounds); see *State ex rel. Harris* v. *Annuity & Pension Board,* 87 Wis. 2d 646, 675, 275 N.W.2d 668 (1979); Hahn, "Procedural Adequacy in Administrative Decisionmaking: A Unified Formulation," 30 Ad. L. Rev. 467, 517 (1978). This conclusion is based upon the factors identified in *Mathews* v. *Eldridge,* 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), and set out above. Not only does a threatened termina-

tion jeopardize a teacher's source of income, like the termination of welfare benefits in *Goldberg*,[11] it may implicate a teacher's professional standing and reputation for competence, efficiency, and integrity and, thus, an important liberty interest. *Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Certainly, the charges made in this case would have such an effect. Moreover, when officials act to deprive a person of a significant property or liberty interest and the reasons therefor are not given, the potential for a determination based on an error of law, mistake, caprice, malice, or discrimination is increased. A requirement that the reasons for the action taken and a summary of the evidence relied upon appear with the decision rendered minimizes the potential for such improper action. Finally, although such a requirement imposes an additional duty upon boards of education, that duty is by no means excessive or unreasonable in view of the liberty or property interests involved. Having carefully considered the charges and all the evidence presented, which is the duty of the board making a termination decision under General Statutes § 10-151 (b), it is hardly an onerous burden to state the reasons for its decision and the evidence upon which it relied. The statement of reasons and a fair summary of the evidence relied upon need not reflect the polish of a judicial opinion. Reasoned and fair decisionmaking, not technical finesse, is guaranteed by the due process standard of the state and federal constitutions. Conclusory language, however, will not suffice. Accord, *Staton* v. *Mayes,* supra, 915–16.

[11] Unlike the deprivation in *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), however, it is not always the case that a teacher derives his sole source of income from his employment.

Our conclusion is also based upon General Statutes § 10-151 (f), which grants a teacher aggrieved by the board's decision the right to judicial review in the Superior Court. On appeal, the court must determine whether the appropriate procedure under the statute and the state and federal constitutions was employed; cf. *Murphy* v. *Board of Education,* 167 Conn. 368, 374–76, 355 A.2d 265 (1974); and whether the evidence relied upon was reliable and substantial and, if believed, sufficient to establish cause under the statute. Cf. General Statutes § 4-183 (g); see *Obeda* v. *Board of Selectmen,* 180 Conn. 521, 523, 429 A.2d 956 (1980); *Tucker* v. *Board of Education,* 177 Conn. 572, 582, 418 A.2d 933 (1979); 63 Am. Jur. 2d, Public Officers and Employees § 202; annot., 4 A.L.R.3d 1090; note, "Teacher Tenure in Connecticut: Due Process Rights and 'Do Process' Responsibilities," 8 Conn. L. Rev. 690, 702 (1976). Effective judicial review of administrative decisions requires that such decisions be based upon substantial evidence and proper reasons. See *Baltimore & Ohio R. Co.* v. *Aberdeen & Rockfish R. Co.,* 393 U.S. 87, 92, 89 S. Ct. 280, 21 L. Ed. 2d 219 (1968); *USV Pharmaceutical Corporation* v. *Secretary of Health, Education & Welfare,* 466 F.2d 455, 461–62 (D.C. Cir. 1972); *In re Boston & Providence Railroad Corporation,* 428 F.2d 159, 164 (1st Cir. 1970); *Great Lakes Screw Corporation* v. *N.L.R.B.,* 409 F.2d 375, 379, (7th Cir. 1967); *Morris* v. *Gressette,* 425 F. Sup. 331, 340–41, affirmed, 432 U.S. 491, 97 S. Ct. 2411, 53 L. Ed. 2d 506 (1976); *Feinson* v. *Conservation Commission,* 180 Conn. 421, 428, 429 A.2d 910 (1980); *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 186, 355 A.2d 91 (1974); *Board of Education* v. *Ingels,* 75

Ill. App. 3d 334, 337, 394 N.E.2d 69 (1979); Davis, Administrative Law Text (3d Ed.) § 16.03; see also Friendly, "Some Kind of Hearing," 123 U. Pa. L. Rev. 1267, 1292 (1975). A court reviewing an administrative determination cannot engage in surmise and conjecture to determine whether the decision was lawfully reached.[12] See *SEC* v. *Chenery Corporation*, 332 U.S. 194, 196–97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947); *Franklin* v. *Shields*, 569 F.2d 784, 797 (4th Cir. 1977). Thus, under the Model State Administrative Procedure Act, an agency is required to prepare "findings of fact and conclusions of law, separately stated." 13 Uniform Laws Annot., State Administrative Procedure § 12 (1980).[13] A similar requirement appears in the Federal Administrative Procedure Act; 5 U.S.C.

---

[12] In this case, for example, where two reasons establishing cause under General Statutes § 10-151 (b) were alleged but no statement of reasons was given by the board, it is impossible for a reviewing court to ascertain whether one or both grounds were found to exist. Moreover, absent a statement of reasons and a fair summary of the evidence relied upon, a reviewing court is unable to determine what evidence was relied upon to establish cause under the statute and, therefore, whether such evidence was sufficient; see *Tucker* v. *Board of Education*, 177 Conn. 572, 576, 582, 418 A.2d 933 (1979); and whether it was appropriate for the board to consider such evidence; see *McDermott* v. *Commissioner of Children & Youth Services*, 168 Conn. 435, 442–43, 363 A.2d 103 (1975); *Murphy* v. *Berlin Board of Education*, 167 Conn. 368, 375–76, 355 A.2d 265 (1974).

[13] It is interesting to note that although the Connecticut Uniform Administrative Procedure Act; General Statutes §§ 4-166 through 4-189; derives from the Model State Administrative Procedure Act, there is currently no provision in our act like § 12 of the model act. When originally enacted, § 4-180 of our UAPA contained a requirement that the agency set out its findings of fact and conclusions of law in its final decision. See General Statutes § 4-180 (Rev. to 1972). This language was deleted from the act in 1973. See Public Acts 1973, No. 73-620 § 17. Notwithstanding, other provisions of the act reinforce the conclusion that findings of fact and conclusions of law, separately stated, must be made. See General Statutes §§ 4-177 (g) and 4-183 (d).

§ 557 (c); and has been adopted with "remarkable uniformity" in nearly all state courts, irrespective of a statutory requirement. Davis, Administrative Law Text (3d Ed.) § 16.03; see also *State ex rel. Harris* v. *Annuity & Pension Board,* 87 Wis. 2d 646, 275 N.W.2d 668 (1979). Once the legislature has afforded a teacher dismissed for cause the right to judicial review of that determination, it is for the courts to ensure that that right is meaningfully protected.

## II

The last claim raised by the plaintiff requires little discussion. The plaintiff's argument that the meeting of the board at which the hearing was conducted was illegal because a quorum was not present is without merit. The authorized membership of the Bristol board of education under the city charter was six. At the time of the plaintiff's termination of contract there was one vacancy of the board. The meeting at which the plaintiff was afforded a hearing, was held by three members of the board. The plaintiff argues that because the number of members present at that meeting was insufficient to constitute a quorum of the authorized membership of the board, the meeting was unlawful and the action taken pursuant thereto of no effect. The plaintiff did not object to the meeting on this basis at the time it was held. Moreover, she has presented this court with no Connecticut authority for the proposition that a quorum is determined from the number of authorized members of a public body rather than the number of actual members at the time action is taken. In the absence of a statute relating to this public body; cf. *Steiner, Inc.* v. *Town Plan & Zoning Commission,* 149 Conn. 74, 175 A.2d 559 (1961); we

see no reason why a meeting held by a quorum of the actual members of the board should be deemed invalid. See *State* v. *Orr,* 61 Ohio 384, 56 N.E. 14 (1899); 56 Am. Jur. 2d, Municipal Corporations § 169; 67A C.J.S., Parliamentary Law § 6 b; annot., 43 A.L.R.2d 698 § 7. Furthermore, the meeting of the board at which the plaintiff's contract actually was terminated was attended by a quorum of both the authorized and the actual number of board members.

The plaintiff's argument that the August 30, 1974 meeting at which her contract was terminated was unlawful because, although it was an emergency meeting, no adequate explanation of the emergency was given is also unavailing. Even were we to assume that the explanation given for the emergency meeting was inadequate,[14] the plaintiff has not demonstrated that holding the board meeting at that time affected her substantive rights. Nor did she make any objection to the procedure followed at that time. Absent a showing that any alleged irregularity in administrative proceedings was prejudicial to the substantive rights of the appellant, no corrective action is warranted by the courts. Cf. *Gelinas* v. *Nelson,* 165 Conn. 33, 40–41, 327 A.2d 565 (1973).

There is error, the judgment is set aside and the case is remanded with direction to return the case to the board for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[14] The meeting was held on August 30, 1974, to consider the termination of the plaintiff's teaching contract. It is readily apparent that the decision regarding the plaintiff's continued employment should have been made, if at all possible, prior to the commencement of the new school year.