RONALD E. THERIAULT *v.* BOARD OF EDUCATION
OF THE TOWN OF BLOOMFIELD
(11385)

FOTI, LAVERY and LANDAU, Js.

Argued March 29—decision released June 7, 1993

*Leon M. Rosenblatt,* for the appellant (plaintiff).

*Stephen P. Fogerty,* with whom, on the brief, was *Carolyn P. Stennett,* for the appellee (defendant).

LANDAU, J. The plaintiff, Ronald E. Theriault, appeals from the trial court's dismissal of his appeal from the decision of the defendant, the board of education of the town of Bloomfield (board), terminating his employment as a vice principal of Bloomfield High School. On appeal, the plaintiff claims that the trial court improperly concluded that (1) there was a written agreement between the board and the Bloomfield administrators association (BAA) governing the termination of the plaintiff and, therefore, the board's action was not illegal, (2) the notice of the board's special meeting complied with General Statutes § 1-21, (3) the plaintiff did not object to the board's meeting in executive session in violation of General Statutes § 1-18a, and (4) the process by which the plaintiff was selected for termination did not violate the plaintiff's due process rights. We agree with the plaintiff's first claim and reverse the judgment of the trial court. As the first claim is dispositive of this appeal, we do not consider the plaintiff's remaining claims.

The following facts are pertinent to this appeal. Theriault was an employee of the board for twenty-two years prior to his termination in 1991. He spent the last sixteen of those years as a vice principal. There were two other vice principals employed by the board. They were Vaughn Ramseur, who was a vice principal for the ten years prior to this action, and Paul Ryan, who was a vice principal for the three years prior to this action. During the 1989-90 school year, the superintendent of schools, Paul Copes, proposed a budget that called for a ten year plan to buy additional books for the school library system. The board also sought to reduce the number of vice principals at the high school from three to two. The board combined these

two objectives in a plan to eliminate a vice principal position and purchase the books over five years with the money saved from the elimination of the vice principal position.

Copes, charged with executing this plan, had to determine which of the three vice principal positions would be terminated. Copes initially determined that because the evaluations of the three vice principals were "all good" and that they were all equally qualified, seniority was to be the deciding factor. Pursuant to that conclusion, he notified Ryan that his position had been selected for termination. Ryan filed a grievance with the BAA and Copes later rescinded his termination of Ryan.

The BAA held two meetings, scheduled on short notice by Ramseur, the president of the BAA, to determine the procedure that would be used to select the position for termination. Theriault, although the vice president of the BAA, was not informed of either of these meetings and did not attend. Every other member of the BAA attended these two meetings.

The BAA considered two selection methods. The first was a "qualitative" method by which the vice principal with the least seniority would be terminated. The other was a "quantitative" method by which numerical scores would be computed based on a series of evaluations of the three vice principals. At the first meeting, the vote resulted in a tie. Ramseur, as president of the BAA, did not participate in the first vote. At the second meeting less than one week later, the vote also resulted in a tie. A few days after the second meeting, Ramseur and Carl Nebelsky, the treasurer of the BAA, met with David Mulholland, president of the Connecticut Federation of School Administrators. On the basis of that meeting, Ramseur decided that the quantitative method should be used and, without calling a further meeting,

broke the tie in favor of the quantitative method. Ramseur forwarded the BAA's recommendation to Copes.

Copes, following the BAA's recommendation, considered the evaluations of the three vice principals for the 1987-88, 1988-89 and 1989-90 school years. Copes relied primarily, however, on the evaluations from the 1989-90 school year, the first year that an actual numerical evaluation system was used. On the basis of the 1989-90 evaluations, Copes decided that Theriault had the poorest evaluation and informed him that his position was being terminated. Copes forwarded this recommendation to the board, which called a special meeting. Theriault requested that the meeting be held in a public session pursuant to General Statutes § 1-18a (e),[1] but the board disregarded his request and met in executive session and voted to terminate him. Theriault appealed to the Superior Court, which dismissed his appeal.

On appeal to this court, Theriault claims that the trial court improperly concluded that there was a written agreement between the board of education and the board of administrators association governing the termination of the plaintiff and, therefore, the board's action was not illegal. We agree.

General Statutes § 10-151 (f) "grants a teacher aggrieved by the board's decision the right to judicial review in the Superior Court. On appeal, the court must determine whether the appropriate procedure under the statute and the state and federal constitutions was employed . . . and whether the evidence relied upon

[1] General Statutes § 1-18a provides in pertinent part: "(e) 'Executive sessions' means a meeting of a public agency at which the public is excluded for one or more of the following purposes: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting . . . ."

was reliable and substantial and, if believed, sufficient to establish cause under the statute. . . . Effective judicial review of administrative decisions requires that such decisions be based upon substantial evidence and proper reasons. . . . A court reviewing an administrative determination cannot engage in surmise and conjecture to determine whether the decision was lawfully reached." (Citations omitted.) *Lee* v. *Board of Education,* 181 Conn. 69, 81–82, 434 A.2d 333 (1980).

Termination of tenured teachers is governed by General Statutes § 10-151 (d).[2] That section provides that the contract of employment of a teacher who has attained tenure may be terminated provided that "determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education . . . ." General Statutes § 10-151 (d). "A basic tenet of statutory construction is that when a statute is clear and unambiguous, there is no room for construction." (Internal quotation marks omitted.) *Infante* v. *Porath,* 29 Conn. App. 465, 467, 615 A.2d 1073 (1992). "We must interpret a statute according to its plain and ordinary meaning." *Tucker* v. *Board of Education,* 4 Conn. App. 87, 92, 492 A.2d 839 (1985). General Statutes § 10-151 (d) clearly and unambiguously requires that there be either a layoff procedure as part of the collective bargaining agreement between the board of education and the teachers' representatives or, in the absence of such agreement, a written policy of the board of education regarding layoffs.

---

[2] While the plaintiff holds an administrative position with the board, he is being terminated as both an administrator and a tenured teacher. Therefore, his termination falls under the procedural protections of General Statutes § 10-151.

The defendant claims that article V, § 5.2, of the collective bargaining agreement, entitled "Reduction in Force," provides the procedure by which a position is eliminated. Our review of that section clearly demonstrates otherwise. Part (a) of that section simply explains that a reduction in force occurs when the board eliminates an administrative position. Parts (b) and (c) are concerned with only the lateral or lower movement of a teacher after the termination has already taken place. This provision does not detail procedures to be followed when a teacher is removed in the first instance and, therefore, does not satisfy the requirements of the statute.[3]

Our review of the record also indicates that there is no written policy of the board regarding the termination of teachers. The very necessity of the BAA meetings, the meetings between Copes and the BAA, and the meeting between Ramseur, Nebelsky and Mulholland to determine how to eliminate the position as well as implementation of the quantitative method by Copes and the BAA demonstrates that no policy existed. Indeed, Copes himself stated that although he would use this method to eliminate the plaintiff's position, he would not be bound by this method in the future. Therefore, the trial court's conclusion that the board did not act illegally in terminating the plaintiff is improper and must be reversed.

Having concluded as such, we must now determine the proper remand and remedy. In *Catino* v. *Board of*

[3] Both parties have conceded throughout these proceedings that there is no provision in the collective bargaining agreement regarding the termination of a tenured teacher. In a letter from Ramseur to Copes, Ramseur stated that "[i]t is the position of the Bloomfield Administrators' Association that our contract is silent relative to a Reduction in Force process and how a decision is to be made as to who is to be 'Riffed.'" Copes also conceded that there was no termination procedure between the board and the BAA in the collective bargaining agreement.

*Education,* 174 Conn. 414, 389 A.2d 754 (1978), our Supreme Court held that a proper remedy afforded a tenured teacher improperly dismissed by a board of education is reinstatement and back pay. Here, however, as in *Catino* v. *Board of Education,* supra, there is no evidence in the record regarding the amount of pay to which the plaintiff is entitled. Therefore, an evidentiary hearing is required to determine this issue.

The judgment of the trial court is reversed and the case is remanded to the trial court with direction to sustain the plaintiff's appeal and to hold an evidentiary hearing to determine the amount of back pay to which the plaintiff is entitled.

In this opinion the other judges concurred.