[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff John Checovetes appeals a decision of the defendant Commissioner of Motor Vehicles (Commissioner) suspending his motor vehicle operator's license. The Commissioner acted pursuant to General Statutes 14-227b. The plaintiff appeals pursuant to 4-183. The court remands the CT Page 10843 case for further proceedings.
Most of the facts essential to the court's decision are undisputed. The police stopped the plaintiff on January 17, 1993, while he was operating his motor vehicle on Redstone Hill Road in Bristol. After administering the standard field sobriety tests, the officer arrested the plaintiff for operating under the influence of alcohol or drugs in violation14-227a. At that time, the plaintiff told the police that he was taking medication. After arresting the plaintiff, the police administered two breath tests to measure the alcohol content of the plaintiff's blood. According to the police report, which was admitted in evidence at the administrative hearing, the test results showed alcohol levels of .347 and .328.
At the administrative hearing on the suspension of his license, the plaintiff appeared and testified. He also presented written statements of a medical doctor and a toxicologist, which were admitted in evidence. Although the transcript of his testimony is not entirely clear, it appears that he testified that he was "on medication" at the time of his arrest and that the medication included Indomethacin, Allopurinal, Micronase, and Zestril.
The statement of Dr. Anthony Ciardella, which the plaintiff introduced, sets forth his credentials as a licensed medical doctor, a former pharmacist, and a lecturer at the University of Connecticut Medical School. He states that the medications the plaintiff was taking at the time of his arrest have a tendency to cause a "false elevation" of alcohol in the blood.
The statement of Dr. Brian Pape, which the plaintiff also introduced, sets forth his credentials as a Ph.D. in toxicology, a private consultant, a professor of pathology at the University of Massachusetts Medical School, and the author of numerous publications on the subject of alcohol and drugs. Dr. Pape has previously testified as an expert witness in state and federal courts. He states his opinion that the test results reported by the police are inconsistent with their observations of the plaintiff, indicating that "(a)t a BAC of 0.34%, most people would be in a stupor or coma." He also states that the decline in the percentage reading in the second test is about twice the expected rate of decline for an CT Page 10844 average adult male. He further states his opinion that "(r)etrograde extrapolation is highly speculative." He states further his opinion that "(t)he apparent decline of his BrAC (sic) test results is not a reliable indication of the rise or fall of his BAC prior to the first breath test."
At the time the statement of Dr. Ciardella was admitted in evidence, the administrative hearing officer commented that "I don't understand much of the terminology he is using in the report. . .I don't know what he means by falsely. I guess he either means false reading, or it's a higher reading than would occur without the normal consumption of alcohol without the synergistic effect of the drug. . ."
The plaintiff advances four grounds for his appeal: (1) that the hearing officer improperly admitted the police officer's A-44 report form; (2) that the hearing officer's finding of probable cause was in error because it was based on hearsay statements in the A-44 form; (3) that the hearing officer's finding of probable cause was based on insufficient evidence; and (4) that the hearing officer failed to give sufficient weight to the evidence submitted by the plaintiff concerning (a) the effect of the prescription drugs he was taking on the intoximeter test results and (b) the reliability of those test results as proof of his alcohol/blood ratio at the time he was operating a motor vehicle.
With respect to the plaintiff's contentions concerning the admission of the A-44 report and the hearsay statements, General Statutes 4-178 provides that "(a)ny oral or documentary evidence may be received" at the administrative hearing of a contested case, and our courts have held that this includes even hearsay evidence so long as it is reliable and probative. In this case, furthermore, the police report contained the officer's own observations of the plaintiff's operation of his vehicle, specifically that the plaintiff "made a wide right turn crossing the center line," which created a reasonable and articulable suspicion sufficient to justify the initial stop. Thereafter, further investigation, including the field sobriety tests, provided sufficient facts on which to base a finding of probable cause.
The plaintiff's objection to the A-44 report on the basis that the police officer's signature is illegible May not be sustained in view of the hearing officer's specific contrary CT Page 10845 finding, based on his examination of the document and articulated at the hearing. In this regard, the court notes the familiar principle of law concerning administrative fact-finding that "(w)ith regard to questions of fact, it is (not) the function of the trial court. . .to retry the case or to substitute its judgment for that of the administrative agency." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51, 57 (1991).
Based on the court's review of the record, the parties' briefs, their oral arguments, and the general principles set forth above, the court concludes that the plaintiff's arguments (1), (2), and (3), as summarized above, May not be sustained.
The last basis of the plaintiff's appeal, that the hearing officer failed to consider expert evidence which had been submitted by the plaintiff, raises significant questions about the administrative fact-finding and decision-making processes that were followed in this case. These issues persuade the court that the case must be remanded for further action.
The court has already noted the general principle that fact finding in administrative cases is the special province of the agency which conducts the evidentiary hearing. In addition to the Conn. Light Power case, supra, General Statutes 4-183(f) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The scope of the court's review of an agency's decision is, therefore, very limited. "If the administrative record provides substantial evidence upon which the hearing officer could have reasonably based his finding. . .the decision must be upheld." Conn. Building Wrecking Co. v. Carrothers, 218 Conn. 580, 601
(1991).
The general principles summarized above would ordinarily preclude the court from inquiring further into agency findings and conclusions concerning factual issues such as the alcohol content of an individual's blood at a certain point in time. In the present case, the hearing officer had some relevant, although perhaps not conclusive, evidence regarding that issue in the form of the plaintiff's breath test results and the police report. The Commissioner had also notified the CT Page 10846 plaintiff in advance of the hearing that the hearing officer would use his special knowledge and training in evaluating the evidence. Many license suspension decisions have been affirmed on the basis of little more than that in the record.
A distinctive feature of the present case, however, was that there was significant expert evidence which tended to cast doubt on the reliability of the breath test results as measurements of the alcohol content of the plaintiff's blood. Other expert evidence introduced by the plaintiff tended to cast doubt on the usefulness of the test results, even if they were accurate, as proof of the alcohol content of his blood at a time prior to the time when he was actually tested. This evidence, which was Dr. Pape's statement, indicated that the alcohol content of the plaintiff's blood at the time he was operating his vehicle could not be reliably extrapolated from the results of the breath tests.
The expert evidence which the plaintiff introduced was not contradicted by any other evidence, expert or otherwise. In this regard, General Statutes 4-178(6) provides that the agency may take notice of "judicially cognizable facts and of generally recognized technical or scientific facts within the agency's specialized knowledge." Arguably, the hearing officer could have taken notice of certain technical or scientific facts within his specialized knowledge and employed them, rather than the plaintiff's evidence, as the basis for his decision. However, 4-178(7) requires the agency to notify parties in advance of any such technical or scientific facts, and the record discloses no such advance notice to the plaintiff in this case. Furthermore, at the administrative hearing, the hearing officer did not give any notice of any technical or scientific facts that he would rely upon in formulating his decision. Finally, as will be seen, the hearing officer's final decision did not reveal any such technical or scientific facts that he might have used in reaching it.
The critical issue that the hearing officer had to decide in this case, pursuant to 14-227(b), was whether "at the time of the alleged offense the ratio of alcohol in the blood of (the plaintiff) was ten-hundredths of one per cent or more of alcohol, by weight. . . ." In writing his decision on this issue, the hearing officer simply utilized the motor vehicle department's printed form, which states only the following: CT Page 10847
 3. The operator submitted to the test or analysis and the results indicated at the time of the offense a BAC of .10 or more.
After receiving the hearing officer's written decision, the plaintiff filed a petition for reconsideration. In that petition, he alleged as error on the part of the hearing officer, inter alia, that the latter failed "to address" the statements of the plaintiff's experts in his decision. The record does not indicate that the Commissioner ever took any action on that petition.
General Statutes 4-180(c) provides, in relevant part, as follows:
 A final decision, in a contested case shall be in writing or orally stated on the record and, if adverse to a party, shall include the agency's findings of fact and conclusions of law necessary to its decision. Findings of fact shall be based exclusively on evidence in the record and on matters noticed.
Section 4-180(c) was enacted in its present form as part of the extensive renovation of the Uniform Administrative Procedure Act in Public Act 88-317, effective July 1, 1989. Prior to Public Act 88-317, the statute provided merely that "(a) final decision or order adverse to a party in a contested case shall be in writing or stated in the record." The previous omission of any obligation to set forth findings of fact or conclusions was designed to relieve administrative agencies, particularly the motor vehicle department, of a perceived "burden" in stating findings and conclusions in their decisions. See Lynch v. Muzio, 204 Conn. 60, 64 — 65 (1987). The clear purpose of Public Act 88-317, therefore, was to restore the requirement of some measure of specificity to the agencies' decision-issuing duties; that is, the requirement that an agency specify its underlying findings and conclusions in its decision.
The obligation to specify findings of fact and conclusions of law in an administrative decision has been held to have constitutional dimensions. In Lee v. Board of Education, 181 Conn. 69 (1980), the court held that "a tenured teacher discharged for cause under General Statutes 10-151
CT Page 10848 (b) is entitled, as a matter of constitutional law, to a written statement of the decision reached, the reasons for the determination, and a fair summary of the evidence relied upon." Id., 79. The court further held that "when officials act to deprive a person of a significant property or liberty interest and the reasons therefor are not given, the potential for a determination based on an error of law, mistake, caprice, malice, or discrimination is increased. A requirement that the reasons for the action taken and a summary of the evidence relied upon appear with the decision rendered minimizes the potential for such improper action." Id., 80.
Although the Lee case involved the teacher tenure law rather than the administrative procedure act, which governs the Commissioner's decisions, the same underlying principles may often apply. In this regard, our courts have long held that the right to a motor vehicle operator's license is a property right entitled to constitutional protection, including the guarantee of due process. Bell v. Burson,402 U.S. 535, 539 (1971); Hickey v. Commissioner, 170 Conn. 136,145 (1976)); Hart Twin Volvo Corp. v. Commissioner, 165 Conn. 42,47 (1973).
Section 4-183(j) of the administrative procedure act requires the court to reverse an agency decision if it is found to be "(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The mandate of 4-183 is especially pertinent to the court's consideration of the issue raised by the plaintiff in this case. "Judicial review of administrative process is designed to assure that administrative agencies act on evidence which is probative and reliable and act in a manner consistent with the requirements of fundamental fairness." Feinson v. Conservation Commission, 180 Conn. 421, 429 (1980). If the court is to conduct a meaningful review of an agency's decision in order to determine if it is erroneous in view of the evidence "on the whole record" or if it is the result of an abuse of discretion, as required by 4-183, the court must be able to ascertain what factual findings the agency made and what conclusions of law the agency drew. Very often, even in cases where the agency's decision inadequately states its findings and conclusions, the court can make the necessary determination based on its own examination of the record. In CT Page 10849 some cases, however, the nature of the evidence in the record or of the principles of law involved, or both, are such that it is incumbent upon the agency to state its findings and conclusions with some extra degree of specificity. Otherwise the court cannot perform its statutory review function.
In the present case, as indicated, the hearing officer was confronted with uncontradicted expert evidence which cast serious doubt on the reliability of the alcohol/blood breath tests. Since there was no other evidence concerning the alcohol content of the plaintiff's blood at the time he was operating his vehicle, the, hearing officer's findings with respect to the validity of those tests should have been absolutely critical to his decision on that issue. However, the written decision is totally silent on the point. And the hearing officer's comments at the hearing, as quoted above, provide no indication of his ultimate findings or conclusions concerning that crucial evidence. It is impossible to determine, therefore, whether the hearing officer forgot or ignored the expert evidence or whether he considered it and found it to be not credible. Likewise, it is impossible to determine whether he based his decision on any other evidence.
In this case, the style and form of the administrative decision completely obscures its rationale. As a result, the court is unable to engage in an adequate evaluation of the plaintiff's claim on appeal that the decision was arbitrary or was based on inadequate evidence. For that reason, the agency's decision denies the plaintiff due process of law. The proper remedy in such a case is to remand the case to enable the agency to provide the reasons for its decision and a fair summary of the evidence relied upon. See 4-183(j) and (k); Lee v. Board of Education, supra.
The appeal is sustained and the case is remanded to the department of motor vehicles for further proceedings consistent with this opinion.
Maloney, J. CT Page 10850