[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal from the decision of the defendant, the Killingly Board of Education (Board), to terminate the employment contract of the plaintiff, Carol Lefevre, a tenured teacher working for the Killingly school system. The court has previously found that the plaintiff was aggrieved by the decision of the Board.
On December 11, 1992, following the dictates of C.G.S. §10-151(d), the Board notified the plaintiff that it was considering terminating her employment contract. On December 29, 1992, the plaintiff responded by requesting a hearing before an impartial hearing panel as provided by § 10-151(d). The panel conducted an evidentiary hearing on this matter on various dates during June, July, and September 1993. On July 20, 1994, the panel submitted sixty-two written findings and its recommendation to the Board. The panel recommended termination based on disability, one of the criteria for terminating a tenured teacher under § 10-151(d).
On August 3, 1994, the Board met to consider the findings of the panel and voted to terminate the plaintiff's contract on two grounds, viz. incompetency and inefficiency and disability, as shown by competent medical evidence. On August 26, 1994, the CT Page 11375 plaintiff commenced this administrative appeal of the Board's decision under the provisions of C.G.S. § 10-151(f).
Essentially, the plaintiff claims that the Board's action was unlawful for two reasons. First, the plaintiff contends that the panel's findings, while themselves supported by the evidence adduced at the hearing before the panel, fail to justify the Board's conclusions that the plaintiff is an incompetent or inefficient teacher or is disabled. Second, the plaintiff contends that the panel's finding and the Board's determination of disability were made without the benefit of competent medical evidence.
When deciding whether to terminate a teacher's employment contract, a board of education acts in a quasi-judicial capacity.Miller v. Board of Education, 166 Conn. 189, 191 (1974). In reviewing such actions of a board of education, under §10-151(d), the court must determine whether the appropriate statutory procedures were complied with, whether the evidence relied upon was reliable and substantial, and whether that evidence, if believed, was sufficient to establish cause under the statute., Lee v. Board of Education, 181 Conn. 69, 81 (1980). In the present case, the plaintiff makes no claim of noncompliance with statutory; procedure or that the evidence relied upon by the Board, i.e. the findings of the impartial panel, was unreliable or unsubstantial. Instead, the plaintiff asserts that those findings were insufficient to establish incompetence or disability.
 I
As to the inadequacy of the panel's findings to demonstrate incompetence of disability, the plaintiff points out mat many of the findings appear merely to restate a witness' comment or notation as to some event rather than explicitly finding that the event actually occurred. As an example, the plaintiff cites Finding 14, in which the panel states that an assistant principal "noted that she had observed the [plaintiff] leave her class unattended while she went to make copies". The plaintiff argues that the Board could only validly regard Finding 14 as supporting the proposition that the assistant principal reported or recorded the event and not that the plaintiff actually left her class unattended.
The court rejects this constrained view of the panel's CT Page 11376 findings. The court feels that the Board was entitled to infer not only that a witness chronicled a particular occurrence but that the event so noted actually occurred. The panel was not merely concerned with what the plaintiff did or failed to do as a teacher but also that such events were reported on a continuing basis and with the plaintiff's reactions to such reports and the advice and counselling which followed the reports. Although, it would have been preferable if the panel crafted its findings to be clear that the panel not only found that a report of an event existed but that the event had occurred, the panel's findings are sufficient to support such inferences by the Board.
From the panel's findings, it was reasonable for the Board to conclude that during the early part of 1992, the plaintiff frequently had poor control over the students in her classroom; that she allowed inappropriate student behavior to go unchecked and uncorrected; that she failed to follow through with the strategies and guidelines given to her by the administration and counselling staff to permit her to regain control; and, that her teaching methods lacked discernible objectives and were ineffectual. Also, the findings reasonably disclose a series of bizarre incidents involving the plaintiff including complaining in a loud and high-pitched voice that students were hiding or stealing objects from her; that she engaged another teacher in conversation and was oblivious to the fact that the teacher to whom she was speaking was the same person about whom she was speaking; that she entered the school nurse's area and spoke incoherently in a very loud voice; that she interrupted normal lunch and bus embarkation routines causing disruption and chaos; that on one occasion she was observed in school drooping her head, staring into space, and mumbling the same phrase over and over for a period of time; that she was talking to herself incoherently in another teacher's classroom for fifteen to forty-five minutes, was dazed, and had to be driven home from school by a staff member. Additionally, the plaintiff was tested by a psychiatrist who diagnosed that the plaintiff suffers from a mental disorder known as borderline personality disorder with depressive and paranoid features and exhibits psychotic-like thinking. The psychiatrist also predicted that the plaintiff's chances for recovery were guarded because she denies the behavior in question and refuses to acknowledge her mental condition and engage in treatment. A clinical psychologist also evaluated the plaintiff and described her as detached, dependent, depressed, obsessive, paranoid, and only borderline functional. The psychologist's prognosis relative to improvement of the CT Page 11377 plaintiff's mental state was poor because she denies her underlying rage and dependency needs.
Clearly, the panel's findings support the Board's conclusions determining that the plaintiff's contract ought to be terminated because of incompetency and disability.
 II
The plaintiff also contends that the panel's findings were insufficient for the Board to conclude that the plaintiff is disabled for another reason. The plaintiff argues that this determination was not based on competent medical evidence as required by § 10-151(d). The plaintiff's position is that, in order for the Board to terminate the plaintiff's contract for disability, the Board must have before it findings based on competent medical evidence not only concerning whether the plaintiff suffers from a mental disorder but also medical evidence concerning the impact that condition has on her teaching ability. The plaintiff regards Finding 46 as critical and determinative of this issue.
In Finding 46, the panel noted that the psychiatrist who evaluated the plaintiff and diagnosed her mental disorder declined to express any opinion as to the plaintiff's ability to meet her responsibilities as a teacher despite her mental disorder. The plaintiff asserts that the absence of such expert medical opinion invalidates the Board's conclusion of disability. The court disagrees.
The court holds that the Board was entitled to consider all the other evidence, including that obtained from nonmedical sources, in conjunction with the medical experts' opinions regarding their diagnoses and prognosis in determining whether the plaintiff was disabled under § 10-151(d). In Finding 56, the clinical psychologist characterized the plaintiff as "borderline" functional and unable to recall narrative or verbal memory tasks. The Board could reasonably link the plaintiff's defective mental condition with the bizarre behavior she exhibited at school and her inability to control and educate her students properly. The Board could logically infer that these behaviors were manifestations of the mental condition described by the psychiatrist and psychologist. The court sees no requirement in the statutory language, "as shown by competent medical evidence", which limits the Board's consideration of this CT Page 11378 possible ground for termination to testimony of a medical expert isolated from all the other evidence in the case.
Here, there were panel findings based on the testimony and reports of a psychiatrist and clinical psychologist leading a reasonable person to conclude that the plaintiff suffers from a mental disorder. The fact that the psychiatrist felt unfamiliar enough with the plaintiff's conduct in the classroom to render an opinion regarding the effect of that condition on her teaching did not prevent the Board from considering all the other circumstances bearing on the plaintiff's ability or inability to teach. The medical experts' diagnoses and prognosis provided the Board with a medical explanation for the existence of these circumstances.
For these reasons, the appeal is dismissed.
Sferraza, J.