[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this administrative appeal are Carlin Contracting Company, Inc., a general contracting company on industrial construction projects, and five of its employees; Quentin Haeseler, Lawrence A. Litevich, Gary A. Litevich, David Denbow, and Joseph Fazekas. They appeal decisions of the defendant plumbing and piping work examination board of the department of consumer protection imposing civil monetary penalties for alleged violations of the statutes regulating the performance of plumbing work. The plaintiffs appeal pursuant to General Statutes § 4-183. The court concludes that the cases must be remanded for further proceedings.
The plaintiffs advance a number of arguments in support of their appeals. The arguments and the facts relevant to each are discussed separately below.
I. Unlawful Procedure
The administrative proceedings in this case commenced as a result of letters written to the defendant department of consumer protection by two men who had been employed by plaintiff Carlin Contracting Co. at a job site in North Branford during 1991. They claimed that Carlin was employing unlicensed workmen to perform plumbing work at the site. Somehow, these letters came into the hands of Hubert J. Barnes, a member of the defendant plumbing and piping work examining board, which is under the jurisdiction of the department. Barnes then wrote to the department's division of licensing and requested an investigation.
After the investigation, the defendant board sent a statement CT Page 11800 of charges and notice of hearing to each plaintiff. The hearing was held on August 27, 1992, and September 24, 1992, before a panel of board members chaired by Robert Hilton. Board member Barnes was present at times during both days of the hearing, but was not designated or identified as a member of the panel hearing the case. During the times when Barnes attended the hearing, however, he was observed talking to members of the hearing panel.
As a basis for their appeals of the decisions of the board, the plaintiffs claim that Barnes and the members of the hearing panel discussed their case in violation of General Statutes §§4-176e and 4-181(a). Section 4-176e provides that "no individual who has personally carried out the function of an investigator in a contested case may serve as a hearing officer in that case." Section 4-181(a) prohibits a member of a hearing panel from communicating ex parte "directly or indirectly, in connection with any issue of fact with any person."
The court held an evidentiary hearing on the plaintiffs' claims of unauthorized communications. The plaintiffs presented three witnesses: Nelson Haeseler, an employee of Carlin Co.; Brian Holmes, an employee of a contractors' association; and John Lynch, an employee of the defendant department, who was one of the investigators in the case. Haeseler and Holmes testified that they observed Barnes conversing with panel members in the hearing room and during breaks outside the room. Both of those witnesses testified that they believed that Barnes and the panel members were referring to papers that were involved in the hearing. Neither witness heard any of those conversations, however. Lynch testified that he and another investigator went to the job site to investigate the allegations in the letters that Barnes had received. Lynch testified that he never discussed the complaints with Barnes, however.
There were no other witnesses. In particular, neither Barnes nor any member of the hearing panel was called as a witness.
Based on the limited evidence presented by the plaintiffs, the court finds that they have not proved any violation of §4-176e. In particular, the evidence does not establish that Barnes "personally carried out the function of an investigator" in the case, nor does it establish that he served as a hearing officer in the case. The evidence is equally inconclusive with respect to the alleged violation of § 4-181(a). In particular, there is no direct evidence that Barnes and the panel CT Page 11801 members discussed "any issue of fact" in the case. The testimony that they appeared to be discussing unidentified papers that may have been involved in some way in the case is simply too vague to support a finding that the panel members violated the law. In this regard, the court notes the general rule that "public officials are presumed to have done their duty until the contrary appears." Leib v. Board of Examiners for Nursing, 177 Conn. 78,84 (1979), cited by the defendants.
II. Erroneous Interpretation of Law
The plaintiffs argue that the board adopted too expansive an interpretation of the term "installation" as it is used in General Statutes § 20-330, defining "plumbing and piping work." In view of its conclusion that the case must be remanded for further factual findings and conclusions, as discussed below, the court declines to rule on this claim at this time.
III. Constitutional and Statutory Violations
The plaintiffs claim that the board's interpretation of the term "installation" and the consequent broad definition of "plumbing and piping" work operate to confer private gain on union members in violation of Article 1, section 1 of the Connecticut constitution, citing Beccia v. Waterbury, 192 Conn. 127
(1984). In this case, however, the plaintiffs point to no evidence that would establish that union workers would gain some illegal advantage over non-union workers as a result of the imposition of strict licensing requirements. The court finds that the plaintiffs have not sustained their burden of proof.
There is likewise no evidence that the appointment of Robert Hilton to the board and his role on the hearing panel in this case violated the provisions of General Statutes § 20-331. The plaintiffs' claim in this regard may not be sustained.
IV. Insufficient Evidence
The administrative hearing in this case consumed two days. Seven witnesses testified, and their testimony is set forth in more than two hundred pages of transcript. Much of the testimony consists of detailed recounting of the variety of work performed by the individual plaintiffs during the course of a complex construction job. The work involved the use of heavy equipment and material, construction of forms and molds, pouring of CT Page 11802 concrete, the exact placement of large pipes, some twenty feet in length, and other tasks. Some of the work at the job site was purely manual labor, some required technical know-how seemingly at the level of a trained engineer.
The basic issue confronting the board in considering the complaints against the plaintiffs was which, if any, of the variety of tasks they performed at the job site constituted "plumbing and piping work" within the meaning of General Statutes § 20-330(3). That statute defines plumbing and piping work as meaning "the installation, repair, replacement, alteration or maintenance of gas, water and associated fixtures . . . all water systems for human usage . . . ."
To resolve this issue, the board members had to arrive at factual findings on the basis of conflicting testimony and to some degree, perhaps, their own technical knowledge. Then they had to determine the meaning of the statutory definition, which required them to consider the arguments of the plaintiffs as well as their own interpretation of the statutory terms in question. Then they had to reach a conclusion in the case of each individual plaintiff as to whether what he did in performing specific tasks constituted plumbing and piping work within the meaning of the statute. Then they had to render separate final decisions, based on their findings and conclusions, as to each of the individual plaintiffs. It should be emphasized that the final decisions had to be individualized because all of the plaintiffs did not perform the same tasks at the job site.
The board did render separate final decisions pertaining to each individual plaintiff and to their employer, plaintiff Carlin Co. In each case, however, the board's decision was so brief that its rationale is virtually obscured. The complete findings of fact and conclusions of law in the case of plaintiff Joseph Fazekas, for example, are stated as follows:
 On at least three occasions during said dates (April 4, 1991 to May 30, 1991), Respondent performed plumbing work by installing pipe on a job site at the Lake Gaillard Water Treatment Plant in North Branford, Connecticut.
General Statutes 4-180(c) provides, in relevant part, as follows: CT Page 11803
 A final decision, in a contested case shall be in writing or orally stated on the record and, if adverse to a party, shall include the agency's findings of fact and conclusions of law necessary to its decision. Findings of fact shall be based exclusively on evidence in the record and on matters noticed.
Section 4-180(c) was enacted in its present form as part of the extensive renovation of the Uniform Administrative Procedure Act in Public Act 88-317, effective July 1, 1989. Prior to Public Act 88-317, the statute provided merely that "(a) final decision or order adverse to a party in a contested case shall be in writing or stated in the record." The previous omission of any obligation to set forth findings of fact or conclusions was designed to relieve administrative agencies of a perceived "burden" in stating findings and conclusions in their decisions. See Lynch v. Muzio, 204 Conn. 60, 64 — 65 (1987). The clear purpose of Public Act 88-317, therefore, was to restore the requirement of some measure of specificity to the agencies' decision-issuing duties; that is, the requirement that an agency specify its underlying findings and conclusions in its decision.
The obligation to specify findings of fact and conclusions of law in an administrative decision has been held to have constitutional dimensions. In Lee v. Board of Education,181 Conn. 69 (1980), the court held that "a tenured teacher discharged for cause under General Statutes 10-151(b) is entitled, as a matter of constitutional law, to a written statement of the decision reached, the reasons for the determination, and a fair summary of the evidence relied upon." Id., 79. The court further held that "when officials act to deprive a person of a significant property or liberty interest and the reasons therefor are not given, the potential for a determination based on an error of law, mistake, caprice, malice, or discrimination is increased. A requirement that the reasons for the action taken and a summary of the evidence relied upon appear with the decision rendered minimizes the potential for such improper action." Id., 80.
Although the Lee case involved the teacher tenure law rather than the administrative procedure act, which governs the board's CT Page 11804 decisions in these cases, the same underlying principles are present here. In these cases, the board imposed significant monetary fines, actions clearly depriving the plaintiffs of important property interests. The plaintiffs are entitled, therefore, to decisions that state clearly the findings of fact and conclusions of law relied upon by the board. Such a minimal requirement is also important for purposes of effective judicial review of the board's decisions, which is guaranteed by the administrative procedure act.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v. Administrator,Unemployment Compensation Act, 209 Conn. 381, 385 (1988).
If the court is to conduct a meaningful review of an agency's decision in order to determine if it is erroneous in view of the evidence "on the whole record" or if it is the result of an abuse of discretion, as required by 4-183, the court must be able to ascertain what factual findings the agency made and what conclusions of law the agency drew. Very often, even in cases where the agency's decision inadequately states its findings and conclusions, the court can make the necessary determination based on its own examination of the record. In some cases, however, the nature of the evidence in the record or of the principles of law involved, or both, are such that it is incumbent upon the agency to state its findings and conclusions with some extra degree of specificity. Otherwise the court cannot perform its statutory review function. CT Page 11805
In the present case, as noted, the board was confronted with conflicting testimony about the different activities of five workmen during the course of a complicated construction project. It was also confronted with a statute requiring precise interpretation and application of its general, non-technical terms to a variety of complicated fact patterns. Presumably, the board members sifted through the testimony and other evidence and made detailed findings of fact in the case of each plaintiff. Presumably, also, the board members construed the statute and arrived at definitions of "installation" and "plumbing and piping work" and applied those legal conclusions to the facts that they found to have been proved. But what the board did not do was include those findings and conclusions in its decisions.
Noting again the Fazekas decision as an example, it is not sufficient to state merely that Fazekas "performed plumbing work by installing pipe" without saying what Fazekas did that constituted "installing". This is especially true under the circumstances of this case where Fazekas was apparently only one of a number of workmen helping on the pipe work. It is also not sufficient to state merely that the violations occurred "on at least three occasions" without specifying what he did on those occasions. This is especially true under the circumstances of this case where the board's decision was to fine Fazekas apparently on the basis of finding that he had committed multiple violations.
The same flaws affect the decisions made by the board in the cases of the other plaintiffs. There is simply not a sufficient statement of the findings of fact and conclusions of law to comply with the minimal requirements of § 4-180 or to afford the plaintiffs the opportunity for meaningful judicial review of the board's decision. For that reason, the decisions deprive the plaintiffs of due process of law. The proper remedy in each case is to remand it to the board to enable it to render new decisions that comply with the law.
The appeal of each plaintiff is sustained. Pursuant to General Statutes § 4-183(k), the cases are remanded to the board to enable it to render new decisions setting forth their findings of facts and conclusions of law in sufficient detail to comply with § 4-180 and consistent with this decision.
MALONEY, J. CT Page 11806