[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiff, Nancy Sekor, appeals pursuant to General Statutes § 10-151(f) from the decision of the defendant, Board of Education of the Town of Ridgefield ("Board"), to terminate her contract of employment as a tenured teacher with the Town of Ridgefield Public Schools. The plaintiff was terminated pursuant to proceedings under General Statutes § 10-151(d). The Board's decision to terminate her employment was based on an impartial hearing panel's finding that the plaintiff was incompetent as a secondary school English and social studies teacher.*
Prior to her termination, the plaintiff was a tenured business education teacher in the Town of Ridgefield Public Schools. The plaintiff was also certified to teach social studies and English courses for grades seven through twelve. During the 1990-91 school year, the plaintiff was assigned to teach one social studies class. The plaintiff's reassignment was necessitated by a decline in enrollment in business education classes. The plaintiff was also assigned to teach English during the 1991-92 school year. During the 1990-91 and 1991-92 school years, the plaintiff was placed on the school administration's "Instructional Improvement Plan/Intensive Assistance Plan" with respect to the social studies and English classes that she was assigned to teach.
On March 23, 1992, the Board voted to consider terminating the plaintiff's contract of employment. In April 1992, Dr. CT Page 7681 Marcus, the Superintendent of Schools, recommended termination of the plaintiff's employment based on "elimination of position," one of the six grounds for termination enumerated in § 10-151(d). The plaintiff alleges that she filed a written request for the statutory reasons pursuant to § 10-151(d). The plaintiff alleges that on April 3, 1992, the attorney representing the administration and the superintendent submitted four statutory reasons for termination in response to her request, despite the fact that only "elimination of position" was considered by the Board.[1]
The plaintiff then exercised her right pursuant to General Statutes § 10-151(d) for a hearing before an impartial panel ("panel"). The panel was composed of Dr. Stuart Losen, who was selected by the plaintiff; Attorney Richard O'Connor, who was selected by the Board; and Attorney J. Larry Foy, who was appointed by the parties as the independent chairperson of the panel. Hearings were held before the panel on twenty-eight (28) days between May 27, 1992 and January 18, 1993.
After the hearings were concluded, the panel met and held "executive sessions" on the following dates: March 11, 1993; April 7, 1993; April 22, 1993; and May 10, 1993. The plaintiff alleges that Chairperson Foy requested and received several extensions of time because he was unable to complete the panel's report within the ninety (90) day period set forth in § 10-151(d)(C). The deadline for rendering a decision was set as May 17, 1993. At the last executive session, Foy sought another extension of time. The plaintiff alleges that the parties mutually consented to a final extension of time until May 24, 1993. The Board alleges that the parties orally agreed to an extension of time until May 26, 1993. The plaintiff alleges that the final report, a 449 page document, was rendered on May 26, 1993, beyond the agreed upon extension of time.
The panel report was signed by Foy and O'Connor. In the majority report, Foy and O'Connor concluded that the plaintiff was always competent to teach business courses. The majority, in recommending termination of the plaintiff's employment, concluded that the plaintiff was incompetent in teaching English, and that based on her incompetency in teaching English and the similarities between teaching English and social studies, that the plaintiff was also incompetent in teaching social studies. On May 26, 1993, Losen filed a dissenting opinion with the Board. The plaintiff alleges that the majority of the panel improperly CT Page 7682 concluded, based on plaintiff's performance in teaching English in the 1991-92 school year, that an "ex post facto inference" could be drawn that she was incompetent to teach social studies. The plaintiff also alleges that the administration failed to comply with the procedure for classroom observations of the plaintiff, as mandated by the "intensive assistance" plan, and that the administration's failure to properly implement the plan was erroneously excused as "harmless error" by the majority of the panel.
The plaintiff brought an application for an injunction before the Superior Court to invalidate the panel report on the ground that it was not timely filed, and on the ground that the report was determined without deliberation and meaningful participation by all the panel members. See Sekor v. Foy, Superior Court, Judicial District of Danbury, Docket No. 313638. On September 23, 1993, the court, Moraghan, J., dismissed the application for lack of subject matter jurisdiction. In so doing, the court found that the plaintiff lacked aggrievement because the Board, after reviewing the report, might choose not to terminate her employment. (Memorandum of Decision on defendant's motion to dismiss at p. 6.) The court also ruled that the plaintiff failed to exhaust her administrative remedies because the issue of the legality of the report must be decided in the first instance by the Board. (Memorandum of Decision at p. 7.)
On October 6, 1993, the Board scheduled a meeting for the purpose of considering the panel's findings and deciding whether to terminate the plaintiff's employment. The plaintiff alleges that she was told that the meeting was scheduled to begin at 8:00 p. m., but the Board, without notice, started the meeting at 7:00 p. m. The plaintiff further alleges that the Board's attorney stated that only the public portion of the meeting would be recorded, and that the private portion could not be recorded. The plaintiff alleges that she then waived her right to a private meeting and demanded a public meeting so that a record could be preserved. At the meeting, the plaintiff sought to raise her claims with respect to the timeliness of the panel report and the alleged procedural irregularities with the panel's methods of reaching its conclusions. The plaintiff alleges that the Board, upon the advice of its counsel, Lawrence Campane (whose firm was representing the Board in an age discrimination action filed by the plaintiff in Federal District Court) refused to address her brief and refused listen to her counsel's arguments regarding the procedural irregularities and problems with the panel's report. CT Page 7683 On October 6, 1993, the Board voted 7-1 to terminate the plaintiff on the ground of incompetency. On November 5, 1993, the plaintiff filed the present appeal from the decision of the Board of Education to terminate her employment.
ISSUES ON APPEAL
1. Whether the Board lacked subject matter jurisdiction to terminate the plaintiff's contract of employment because the report of the hearing panel was not timely filed.
2. Whether the Board improperly terminated the plaintiff for reasons not properly approved and noticed by the Board under the notice provisions of General Statutes § 10-151.
3. Whether the majority of the hearing panel erred in making their findings of fact and recommendations to the Board, and whether the Board erred in relying on those findings and recommendations, namely:
 (a) whether the majority of the hearing panel erred in finding that the administration and the Board substantially complied with the mandates of the Teacher Evaluation Plan;
 (b) whether the majority of the hearing panel erred in finding that the plaintiff was an incompetent social studies teacher; and
 (c) whether the Board acted illegally and improperly in terminating the plaintiff, who was found to be a competent business teacher, on the grounds of general incompetency and inefficiency.
4. Whether the plaintiff was denied her right to procedural due process because the findings of fact and final recommendations of the majority of the hearing panel were made by the chairperson of the panel, and because the panel member selected by the plaintiff was excluded from deliberating on these findings and recommendations.
5. Whether the Board's meeting on October 6, 1993 to consider the plaintiff's employment was conducted in a manner which deprived the plaintiff of her procedural due process rights because the plaintiff's counsel was precluded from raising certain issues in front of the Board, and because counsel advising the Board had a conflict of interest which prevented him from engaging in such representation. CT Page 7684
6. Whether the record submitted by the Board constitutes the official record of the panel's deliberations.
STANDARD OF REVIEW
The procedures contained in § 10-151 for terminating a teacher's contract of employment must be strictly followed.Petrovich v. Board of Education, 189 Conn. 585, 590, 457 A.2d 315
(1983).
"When considering termination of a tenured teacher's employment contract, a school board acts like an administrative agency, in a quasi-judicial capacity. . . . [The court's] function in reviewing the action of the board pursuant to § 10-151(f) is to determine whether the board has acted illegally and not to substitute [its] judgment for that of the board. . . ." (Citations omitted; internal quotation marks omitted.) Barnett v. Board of Education, 232 Conn. 198, 206
(1995). The Board "has a duty under § 10-151(b) to afford a tenured teacher a fair hearing and to terminate the employment contract only for one or more of six reasons. . . ."Catino v. Board of Education, 174 Conn. 414, 417, 389 A.2d 754
(1978).
Where a teacher exercises her right to a hearing before an impartial panel, the panel acts as a fact-finder and is required to make a recommendation to the Board of Education. General Statutes § 10-151(d). "A school board has discretion to accept or reject a recommendation from an impartial hearing panel, though it is bound by the panel's findings of fact unless unsupported by the evidence." (Citations omitted; internal quotation marks omitted.) Barnett v, Board of Education, supra,232 Conn. 206. The board may also reject the hearing panel's factual findings where the panel has acted illegally, arbitrarily or capriciously. Rado v. Board of Education, 216 Conn. 541, 555,583 A.2d 102 (1990). "The board is bound by the panel's findings of fact, but not by its legal conclusions or by its recommendations." (Citation omitted; internal quotation marks omitted.) Barnett v. Board of Education, supra, 232 Conn. 206.
1. Whether the Board lacked subject matter jurisdiction to terminate the plaintiff because the report of the hearing panel was not timely filed. CT Page 7685
In the present case, the panel members, during the course of their deliberations, informed the parties that they needed an extension of time to complete their written findings and recommendations. The plaintiff alleges that several mutually agreed upon extensions were granted to the panel by the parties, the last of which was until May 17, 1993. The plaintiff alleges that at the last executive session, Chairperson Foy asked for another extension of time. The plaintiff alleges that she agreed to an extension until May 24, 1993, and that "Foy's report" was not rendered until May 26, 1993.
Testimony and evidence establish that during the May 10, 1993 executive session, one of the panelists (Losen) called the plaintiff's attorney, William Laviano, and on behalf of the panel, asked for an extension of time beyond the May 17, 1993 deadline for rendering the written findings and recommendations. Laviano agreed to an extension until May 24, 1993. Laviano then wrote a letter to the administration's attorney, Thomas Mooney, to confirm the May 24, 1993 date. Several days later, it was conveyed to Laviano that Foy needed until May 26, 1993, to finish the report. Laviano then contacted Mooney and asked Mooney to amend the date on the letter from May 24 to May 26, initial the amendment, and fax a copy to Laviano so that he could initial the amendment. Mooney amended the date to May 26, affixed his initials, and sent the amended letter to Laviano. Laviano testified that once he received the amended letter, he spoke with the plaintiff, who refused to agree to the May 26 extension. Laviano testified that because his client objected to the May 26 extension, he never initialed the amendment, and therefore, never agreed to extend the deadline to May 26, 1993. In the interim, Mooney sent a copy of the amended letter with the May 26, 1993 date, initialed only by Mooney, to Foy, who relied on the May 26 extension in rendering the majority's findings and recommendations.
General Statutes § 10-151(d) provides, in pertinent part, that:
 Within ninety days after receipt of the request for a hearing, the impartial hearing panel . . . unless the parties mutually agree to an extension, shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher.
Based on the testimony and evidence, it is clear that Laviano spoke with Mooney and initially agreed to an extension of time CT Page 7686 until May 26, 1993. The testimony establishes that Mooney amended the date on the letter to May 26, 1993, based on Laviano's representations and instructions. The fact that the plaintiff's attorney never initialed the amendment on the letter, and the fact that the plaintiff might have subsequently withheld her consent to her attorney's agreement to extend the time for filing the panel report, are of no significance. Thus, a meeting of the minds to extend the due date to May 26, 1993 is established by a preponderance of the evidence, and that the plaintiff is estopped from subsequently attempting to withdraw her consent to the extension after the panel relied upon the extension in rendering their findings and recommendations. Also, because it is possible that the plaintiff's attorney misled the panel so that they would file the report late and, alternatively, because it is possible that the parties and the panel might have been confused by the last minute flurry of activity between counsel, the court holds that any error that might have occurred does not implicate the court's subject' matter jurisdiction. The court is inclined, whenever possible, to overlook minor defects and adjudicate the case on the merits. Killingly v. Connecticut Siting Council,220 Conn. 516, 522, 600 A.2d 752 (1991).
2. Whether the Board improperly terminated the plaintiff for reasons not properly approved and noticed by the Board under the notice provisions of General Statutes § 10-151.
The plaintiff argues that the administration originally submitted "elimination of position" to the Board as the reason for terminating the plaintiff's contract of employment, and that the Board voted to terminate the plaintiff based only on that reason. The plaintiff argues that the administration's attorney then informed her that she was being terminated for four of the six reasons listed in § 10-151(d), even though the Board had only considered "elimination of position" as a ground for termination. The plaintiff argues that it was improper for the administration's attorney to respond to her request for the reasons for her termination. The plaintiff also argues that because the Board never voted on any reason other than "elimination of position," the administration could not unilaterally choose to notify the teacher of reasons for termination which were not first voted upon by the Board. Thus, the plaintiff contends that the issue of competency was not properly before the hearing panel and the panel lacked subject matter jurisdiction to consider statutory reasons for termination other than "elimination of position." CT Page 7687
General Statutes § 10-151(d) provides in pertinent part that:
 Prior to terminating a contract, a board of education shall vote to give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with such board within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor.
In Joanou v. Board of Education, 165 Conn. 671, 345 A.2d 46
(1974), the court held that notice of termination which is sent to the plaintiff by the superintendent instead of by the board constitutes sufficient notice. Id., 673. Likewise, in Meehan v.East Lyme Board of Education, Superior Court, Judicial district of New London at New London, Docket No. 525063 (March 9, 1994, Hendel, J.), the court held that the board may delegate the notice function to the superintendent of schools. Slight deviations from the statute have been excused provided that: (1) the plaintiff was apprised of the charges against her; and (2) the plaintiff had the opportunity to address and rebut those charges before the impartial hearing panel. Tucker v. Board ofEducation, 177 Conn. 572, 578 n. 5, 418 A.2d 933 (1979); Conley v.Board of Education, 143 Conn. 488, 493-94, 123 A.2d 747 (1956).
In the present case, it is of no significance that written notice of the statutory reasons for termination was sent to the plaintiff by the attorney representing the administration. In light of the holding in Joanou v. Board of Education, supra, such notice constitutes substantial compliance with § 10-151(d). The plaintiff's argument that she received defective written notice in response to her request for the reasons for her termination is also without merit. Nothing in the language of § 10-151(d) states that written notice of the reasons for termination must be limited only to those reasons actually considered or voted on by the Board. Upon receipt of the written notice from the administration's attorney, the plaintiff was fairly apprised that her employment contract could be terminated on the grounds of elimination of position, incompetency and inefficiency, insubordination, and other due and sufficient cause. "Since the plaintiff in fact received the required notification, she was not prejudiced by the absence of prior board authorization." Mauriello v. Board of Education,176 Conn. 466, 472, 408 A.2d 247 (1979). CT Page 7688
The fact that the Board subsequently abandoned "elimination of position" and argued that the plaintiff should be terminated for "inefficiency or incompetence" before the hearing panel is of no significance because: (1) the plaintiff was fairly apprised that "inefficiency and incompetence" would be argued by the Board; and (2) a review of the record discloses that during the twenty-eight days of hearings before the panel, the plaintiff had ample opportunity to address and rebut the Board's charges that she was incompetent.[2] Thus, that hearing panel had subject matter jurisdiction to consider statutory reasons for termination other than "elimination of position."
3. Whether the findings of fact and recommendations of the hearing panel are supported by the record, and whether the Board's decision to terminate the plaintiff was illegal and improper.
 (a) Whether the administration substantially complied with the Teacher Evaluation Plan.
In reaching its recommendation to terminate the plaintiff's employment, the majority of the hearing panel found that the administration failed to observe the plaintiff for a portion of the time that she was on the "intensive assistance" plan. The majority of the panel concluded that this failure to observe the plaintiff constituted "harmless error" because the plaintiff's attitude was such that even if she received all of the planned classroom observations, it would not have made a difference in her performance. (See report filed by the majority of the hearing panel ("majority report"), finding 431.)
The plaintiff argues that the panel erroneously concluded that the administration and the Board substantially complied with the mandates of the "intensive assistance" plan. The plaintiff argues that the administration and the Board must strictly comply with the Instructional Improvement Plan (which sets forth the "intensive assistance plan"), and that General Statutes § 10-151 does not give the Board or the majority of the hearing panel the right to dispense with or ignore the statutorily mandated evaluation and termination procedures. The plaintiff argues that the primary mechanism for assisting the teacher is classroom observation by a certified administrator and, therefore, the Board cannot fire a tenured teacher where the administration fails to observe the teacher for the majority of the time that CT Page 7689 she was on the "intensive assistance" plan. The plaintiff further argues that the failure to observe the plaintiff, allegedly due to the fact that one administrator was on maternity leave, was improperly excused by the majority of the panel because there was another administrator who could have observed the plaintiff and who could have provided the mandated assistance.
General Statutes § 10-151b(a) provides, in pertinent part, that:
 The superintendent of each local or regional board of education shall, in accordance with guidelines established by the State Board of Education for the development of evaluation programs and such other guidelines as may be established by mutual agreement between the local or regional board of education and the teachers' representative . . ., continuously evaluate or cause to be evaluated each teacher.
Section 10-151b(b) provides, in pertinent part, that "[e]ach local and regional board of education shall develop and implement teacher evaluation programs consistent with guidelines established by the State Board of Education and consistent with the plan developed in accordance with the provisions of subdivision (2) of subsection (b) of section 10-220a." Section10-220a(b)(2) provides, in pertinent part, that:
 [E]ach local and regional board of education shall develop, with the advice and assistance of the teachers and administrators employed by such boards . . . a comprehensive professional development plan to be implemented not later than the school year 1994-1995. Such plan shall be directly related to the educational goals prepared by the local or regional board of education pursuant to subsection (b) of section 10-220, and shall provide for the ongoing and systematic assessment and improvement of both teacher evaluation and professional development of the professional staff members. . . .
At all times pertinent to this action, and in conjunction with its statutorily mandated Teacher Evaluation Plan, the Ridgefield Board of Education had in effect an "Instructional Improvement Plan" (Plan) which establishes a procedure for teachers who are having performance difficulties. (Record, exhibit H-2.) The Plan is divided into two phases: (1) "corrective action"; and (2) "intensive assistance." The Plan provides, in pertinent part, that: CT Page 7690
 Whenever a teacher, whether tenured or non-tenured, is having difficulty with his/her performance, it will be necessary to provide that individual with additional support and supervision. The process of providing such support and supervision is called "Intensive Assistance."
 [P]rior to an evaluator indicating that performance is deficient . . . The following procedures for corrective action must have been followed:
 A. There must have been sufficient classroom or other observation(s) and/or records to identify the area(s) of concern or deficiency.
B. A plan for corrective action must follow.
. . . .
 A teacher who does not correct in the area(s) of concern or deficiency within a reasonable period . . . shall immediately be placed on a FULL REVIEW evaluation and the following additional administrative procedure must be followed:
 A formal, written Intensive Assistance Plan shall be developed in concert with the teacher which:
1. Clearly identifies the area(s) of concern. . . .
2. Clearly expresses the evaluator's expectations. . . .
3. Outlines a plan for improvement. . . .
 4. Provides a reasonable and specific time period in which improvement will be made; and
 5. Provides a monitoring system to be used in a supportive fashion which includes regular and a specific minimum number of observations and/or conferences.
In the present case, the plaintiff was assigned to teach one social studies class during the 1990-91 school year. Although the plaintiff was certified to teach social studies, this was a new assignment for her. At some time during the beginning of the 1990-91 year, the administrators assigned to observe the plaintiff noted deficiencies in the plaintiff's method of CT Page 7691 instruction. (Majority report, finding 451 .) On November 6, 1990, the plaintiff was placed on "corrective action," and was required to meet on a weekly basis with Dr. Merrill, an administrator. (Majority report, findings 304 and 451.) One of the objectives of the plaintiff's "corrective action" plan was for her "to be involved in a regular schedule of classroom observations. . . ." (Majority report, finding 304.) The plaintiff was also required to observe other experienced social studies teachers. (Id.) On December 21, 1990, the plaintiff was placed on "intensive assistance" for the remainder of the 1990-91 school year with respect to the one social studies class that she was assigned to teach. (Majority report, finding 447.) On February 26, 1991, the plaintiff was informed that she would remain on intensive assistance while Dr. Merrill went on maternity leave, and another administrator, Mary Gorman, would act as the plaintiff's evaluator. (Majority report, findings 533 and 551.) Through February 26, 1991, the plaintiff was observed eight times and attended fifteen meetings with administrators and department leaders. (Majority report, finding 533.) Nevertheless, the plaintiff was "to be involved in a regular schedule of formal and informal classroom observations. . . ." (Id.) On June 19, 1991, the plaintiff was informed that she would continue on "intensive assistance" for the 1991-92 school year. (Majority report, finding 604.) This was allegedly because the administrators still had concerns about the plaintiff's teaching methodology, and because she would be teaching English, a new assignment for her, in the 1991-92 school year. (Majority report, finding 614.) Thereafter, the plaintiff was observed at least fifteen times while teaching English during the 1991-92 school year. (Majority report, finding 751.)
The plaintiff's arguments with respect to the administration of her "intensive assistance" plan are without merit. General Statutes § 10-151b mandates only that the local board of education or superintendent shall continuously evaluate each teacher. General Statutes § 10-220a(b)(2) requires a local board to create a "comprehensive professional development plan" which provides for "the ongoing and systematic assessment and improvement of . . . teacher evaluation. . . ." Nothing in the language of these statutes mandates a specific number of classroom observations, or provides that classroom observation is the "primary mechanism" for assisting or promoting a teacher's professional development. Nothing in the language of these statutes mandates that the local board or the superintendent must strictly comply with either the requisite evaluation plan or CT Page 7692 professional development plan once such a plan is implemented.
The plaintiff's arguments also lack merit when viewed in light of the language of the Instructional Improvement Plan ("Plan"). One of the numerous mechanisms for assisting a teacher who is placed on the "corrective action" phase of the Plan is "sufficient classroom or other observations. . . ." If a teacher is placed on the "intensive assistance" phase of the Plan, the teacher is required to receive a "regular and a specific minimum number of observations and/or conferences," along with the other mechanisms for assistance which are set forth in the Plan. The terms "sufficient" and "specific minimum number" are not defined in the Plan, nor does the language of the Plan mandate "strict compliance" with any particular part of the Plan. Furthermore, nothing in the language of the Plan sets forth classroom observations of a teacher as the "primary mechanism" of assistance. For example, a review of the plaintiff's "corrective action" and "intensive assistance" plans reveals that meetings with administrators and experienced teachers, observation of other teachers, development of lesson plans, independent reading and course work, and use of professional library materials are all "mechanisms" that are of equal importance with having an administrator observe the teacher. (Majority report, findings 304 and 451; exhibit M-5.)
The court is not be persuaded by the plaintiff's argument that the administration failed to observe the plaintiff for "a majority" of the time that she was on "intensive assistance." The administration's failure to observe the plaintiff occurred during the 1990-91 school year. Thus, the plaintiff's argument would have some merit if she was terminated at the end of the 1990-91 school year. However, the plaintiff was observed on a regular basis during the 1991-92 school year when she was having difficulties teaching English, and her termination occurred after the conclusion of the 1991-92 term.
In concluding that the administration and the Board substantially complied with the Teacher Evaluation Plan, the majority of the hearing panel found that the plaintiff's "attitude" would have rendered the observations and assistance meaningless. (Majority report, finding 431.) The court should conclude that this portion of the finding is problematic because it is contradicted by evidence in the record which establishes that during the 1990-91 school year, the plaintiff was generally cooperative and open to suggestions for improvement that were CT Page 7693 made by administrators and other experienced teachers. (See, e.g., the plaintiff's year end evaluation for 1990-91, exhibit C-3.) Nevertheless, the court concludes that the majority of the hearing panel did not err in finding that the administration substantially complied with the Plan (i.e., that the failure to observe the plaintiff between February 1991 and June 1991 constituted "harmless error"), as these findings are supported by the applicable statutes, the language of the Instructional Improvement Plan, and the evidence before the court.
 (b) Whether the majority of the panel erred in finding that the plaintiff was an incompetent social studies teacher.
The plaintiff argues that the majority of the hearing panel erred in concluding that she was incompetent to teach social studies. Specifically, the plaintiff contends that the majority improperly disregarded evidence which tended to show that she was a competent social studies teacher during the 1990-91 school year, and then made an "ex post facto" determination that she must have been an incompetent social studies teacher because of her incompetent performance as an English teacher during the 1991-92 school year.[3]
In the present case, the relevant inquiry is whether the majority's finding is supported by substantial evidence.
 This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. . . . The United States Supreme Court, in defining substantial evidence . . . has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. CT Page 7694
Barnett v. Board of Education, supra, 232 Conn. 211-12.
With respect to the plaintiff's ability to teach social studies, the majority of the panel found as follows:
 The question which finally generated the most debate among the panel members was whether Sekor is instructionally incompetent in social studies. A majority of this panel is convinced that the Administration has met its burden on this point.
 In the fall of 1990, Sekor had serious instructional problems in social studies. She was placed on corrective action and then on intensive assistance. . . . By the time of her midyear review, Sekor had shown some improvement, but serious problems still remained. . . . At the end of the year Capwell concluded that Sekor had reached borderline or marginal competency in the one small social studies class she was teaching, but Capwell continued to have serious reservations and concerns about Sekor's performance in that certification area (social studies).
 If it were now the summer of 1991 and this panel had to, decide whether the Administration had proven Sekor instructionally incompetent in social studies, we would find that the Administration had not met its burden. However, it is not the summer of 1991. . . . Sekor's complete failure in both her instructional assignments in English and in the fulfillment of her administrative responsibilities during 1991-92, when coupled with the record of school year 1990-91 and when considered in light of Sekor's overall record, persuade this panel that Sekor cannot perform competently and efficiently in either of the certification areas she holds outside of business 7-12 (i.e., English 7-12 and social studies 7-12).
. . . .
 The panel is convinced that Sekor's problems are not realistically segmentized into English versus social studies. The record shows that, when Sekor is assigned to courses outside the area of her business certification, she experiences serious problems and the degree and persistence of those problems is directly related to how much of her teaching responsibility is outside her business 7-12 certification. . . . [W]ith one small class of social studies, Sekor had serious administrative and CT Page 7695 instructional difficulties early in the year. As she adjusted, the administrative problems decreased substantially and her instructional problems decreased moderately, but only with much administrative help. . . . The following year, when most of her schedule . . . was outside of business . . . neither her administrative nor her instructional problems improved. Indeed, they worsened.
 If the panel were to find Sekor competent in social studies, we would have to believe that she could function at an instructionally and administratively competent and efficient level if assigned primarily or completely social studies course, including different ability levels and grade levels in the same year. We are convinced, given Sekor's experience in school years 1990-91 and 1991-92 that she could not do so. There are fundamental differences between teaching business courses such as keyboarding and teaching more cognitive courses such as English or social studies.
(Panel Report, pp. 44144.)
Based on the record, reviews of the plaintiff's performance while teaching one social studies course during the 1990-91 school year were mixed at best. At times, administrative observers noticed problems and deficiencies in the plaintiff's it instructional performance and teaching methodology. (See, e.g., findings 349, 447, 516, 535 and 614; exhibit M-2.) At other times, the observers noticed improvements in the plaintiff's teaching methods. (Findings 508 and 512; exhibit M-8.) During the hearings before the panel, one of the administrators (Capwell) testified that "while Sekor demonstrated incompetence during the year (1990-91), by the end of the year Sekor was not so incompetent that she should have been terminated at that time." (Majority report, p. 438.)
In the year end evaluation for the 1990-91 school year, the evaluating administrator ranked the plaintiff as "competent" in twenty-six (26) of twenty-eight (28) categories. (Exhibit C-3.) While such an evaluation appears to be very favorable to the plaintiff, it is impossible to determine whether the favorable ratings resulted from the business courses that she taught or from the one social studies class that the plaintiff taught during the 1990-91 year. Nevertheless, a review of the administrator's commentary reveals that the plaintiff was criticized for her teaching of social studies. With respect to CT Page 7696 the social studies course, the administrator commented that "[i]t is in the more abstract, concept-oriented areas like social studies where Mrs. Sekor must continue to monitor students' learning, adjust instruction and more closely evaluate students' progress and achievement." (Exhibit C-3, p. 2.) The administrator further commented that "[i]t became apparent that Mrs. Sekor needed considerable help in determining learning objectives, in planning and organizing instruction around the objectives, in developing strategies and techniques appropriate to the pre-adolescent child . . . ." (Exhibit C-3, p. 4.) It also must be noted that the plaintiff received a general "unsatisfactory" rating in effecting lesson plans and fulfilling administrative requirements. (Exhibit C-3, pp. 2-3.) As a result of her problems in teaching social studies, the administrator concluded that the plaintiff should remain on "intensive assistance" for the 1991-92 school year. (Exhibit C-3, p. 4.)
The evidence available at the end of the 1990-91 school year constitutes substantial evidence of the plaintiff's incompetency to teach social studies. Evidence in the record supports the majority's findings that the plaintiff experienced the same or similar problems while teaching a number of English classes during the 1991-92 school year. (Majority report, findings 752-77.) Evidence with respect to the plaintiff's difficulties in teaching one social studies class, when viewed in light of the evidence of her demonstrated incompetency in teaching English, supports the majority's conclusions that: (1) the plaintiff's problems were not "realistically segmentized into English versus social studies"; and (2) that the plaintiff needed intensive administrative assistance in order to achieve "borderline" competence in teaching one social studies class. (Majority report, p. 443.) Thus, the majority of the panel's conclusion that the plaintiff is incompetent to teach outside of her business certification (i.e., to teach social studies) is supported by substantial evidence.
 (c) Whether the Board improperly terminated the plaintiff on the grounds of general incompetency and inefficiency.
The plaintiff argues that she was improperly terminated on the ground of general incompetence and inefficiency despite the panel's finding that she was, at all times, a competent business teacher. The plaintiff contends that because she was found to be a competent business teacher, she cannot be adjudged as generally incompetent based upon her first-time performance in teaching CT Page 7697 social studies and English. In response, the Board argues that § 10-151 authorizes the termination of a teacher for incompetence without reference to the teacher's certification areas or whether the teacher is competent in one of several areas of certification. The Board argues that nothing in the language of § 10-151 precludes it from terminating a teacher for incompetence, even if the teacher was found to be competent in another area. Thus, the Board argues that it need not review the issue of competence on a certification by certification basis when it terminates a teacher for incompetency.
The board has the burden of proving the grounds of termination alleged. Tucker v. Board of Education, supra,177 Conn. 576. Nevertheless, "[t]he plaintiff has the burden . . . of proving that the record before the board does not support the action it took." Mauriello v. Board of Education, supra,176 Conn. 474.
During the course of the hearings before the panel, the administration withdrew "elimination of position" as a reason for terminating the plaintiff, and proceeded based upon "inefficiency and incompetence," "insubordination," and "other due and sufficient cause."[4] (Majority report, finding 923.) It is not disputed by the parties that after the hearings started, a full-time business teacher with more tenure than the plaintiff retired, making a full-time business position available.
General Statutes § 10-151(d) provides, in pertinent part, that "[t]he contract of employment of a teacher who has attained tenure . . . may be terminated at any time for one or more of the following reasons: (1) [i]nefficiency or incompetence. . . ." "The determination of the legality of the board's decision is controlled by statute. . . . The statute [General Statutes § 10-151(d)] is facially clear and unambiguous. . . . Where a statute is clear and unambiguous, there is no room for statutory construction. . . . The statute is to be applied according to its plain language." McKee v. Board of Education, 32 Conn. App. 6,10, 627 A.2d 951 (1993). Nevertheless, for purposes of the present case, § 10-151(d)(1) is ambiguous as to whether a tenured teacher may be terminated for "inefficiency or incompetence" where that teacher has been found to be competent and efficient in some or one of her areas of certification, and incompetent and inefficient in other areas of certification.
The court, in addressing this issue, must do so with regard CT Page 7698 to the constitutional property rights which attach to tenure. "A teacher who is given by statute the right to continued employment except upon a showing of cause or the bona fide elimination of his position; see General Statutes § 10-151(b); acquires a property right that is entitled to protection under the due process clause." Lee v. Board of Education, 181 Conn. 69, 72,434 A.2d 333 (1980). "Thus, the plaintiff [has] a `legitimate claim of entitlement' to the continuance of her teaching contract that was protected by the state and federal constitutions." Id. The charges of incompetency and inefficiency against the plaintiff "reflect upon her professional competence and character, [and] implicate her interest in liberty protected by the due process clause of the fourteenth amendment." Id.
Both the majority of the panel and the dissenting panelist found the plaintiff to be a competent business teacher. "[T]he panel finds that Sekor is instructionally competent in the area of her business 7-12 certification. . . . [T]here was not a single observed business (keyboarding)lesson where it can said that Sekor taught incompetently." (Majority report, p. 441.) The majority, in making its "ultimate findings," found:
 1. Nancy Sekor is not competent and efficient to teach in the two areas of certification she holds outside of business 7-12
certification (i.e., English 7-12 and social studies 7-12).
 2. Nancy Sekor would be competent and efficient to teach if she were assigned exclusively within the area of her business 7-12 certification.
(Majority report, p. 448.)[5] Based on these "ultimate findings," the majority of the panel recommended termination of the plaintiff's contract of employment.
"A school board `has discretion to accept or reject a recommendation from an impartial hearing panel,' though it is bound by the panel's findings of fact unless unsupported by the evidence." Rado v. Board of Education, supra, 216 Conn. 555. In the present case, the Board is bound by the panel's findings that the plaintiff was competent in business and incompetent in English and social studies, as the findings are not illegal, arbitrary or capricious, and are supported by substantial evidence in the record. See Petrino v. Board of Education,179 Conn. 428, 433, 426 A.2d 795 (1980). The majority of the panel recommended termination of the plaintiff's employment based on CT Page 7699 her incompetence in teaching English and social studies. The Board is not bound by the panel's legal conclusions or recommendation as to the disposition of the case. Id.; Barnett v.Board of Education, supra, 232 Conn. 206.
In terminating the plaintiff for incompetency, despite the fact that she was found to be a competent business teacher, the Board (and the majority of the hearing panel) interpreted the language of § 10-151(d)(1) as permitting such a course of action. "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . On the other hand, it is the function of the courts to expound and apply governing principles of law. . . ." Tomlinson v. Board ofEducation, 226 Conn. 704, 713, 629 A.2d 333 (1993).
 Judicial review of the conclusions of law reached administratively is . . . limited. The court's ultimate duty is only to decide whether, in light of the evidence, the board has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts. . . .
(Internal citations and quotation marks omitted.) Barnett v.Board of Education, supra, 232 Conn. 207-08.
In the present case, the Board erred because it terminated the employment contract of a competent, tenured business teacher on the ground of general incompetency, despite the fact that there was no evidence in the record that she ever taught courses in her business 7-12 certification in an incompetent manner, and despite the fact that during the course of the termination proceedings, a full-time business 7-12 position was available. While the Board is correct in noting that § 10-151(d)(1) does not expressly make reference to areas of a teacher's certification for purposes of determining a teacher's competency, the lack of such a reference does not mean that a board, proceeding under § 10-151(d)(1), can terminate a tenured teacher because he or she was found to be incompetent in one or some areas of certification. In interpreting § 10-151(d)(1), and in considering whether the termination of tenured teacher's employment contract was proper, the court must consider the teacher's areas of certification and the fact that the teacher CT Page 7700 was found to be competent in at least one of her areas of certification. If the court were to do otherwise and rule that the Board could terminate the employment of a competent business teacher based on her incompetent performance in her other areas of certification (i.e., in English and social studies), the court would, in essence, render the concept of tenure and the protected property interests associated therewith as meaningless. In construing the statute, the court must view the process for terminating a tenured teacher as one which respects the teacher's due process rights and protected property interests. In order to accomplish this goal, the court must view the termination of a competent, tenured business teacher on the grounds of general incompetency and inefficiency as patently improper.
CONCLUSION
Reversal of an administrative agency's decision is appropriate where "the administrative findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tomlinson v. Board of Education, supra,226 Conn. 713.
Accordingly, the decision of the Board to terminate the plaintiff's contract of employment is reversed, and the plaintiff's appeal is sustained. Because the court finds that the Board erred in terminating the employment contract of a competent tenured business teacher, the court need not address the fourth, fifth and sixth issues raised by the plaintiff in her brief.
With respect to the type of relief that the court may order, in Catino v. Board of Education, supra, 174 Conn. 414, the court stated that:
 Reinstatement was a proper exercise of the court's power to `affirm or reverse' the board's decision under General Statutes § 10-151(d). Where there is but a single course of action which an agency can legally take, a court may direct the agency to follow that course of action. Adamcheck v. Board of Education, 174 Conn. 366, 372, 387 A.2d 556 (1978); WalkerCT Page 7701 v. Jankura, 162 Conn. 482, 491, 294 A.2d 536 (1972). The court erred, however, in ordering back pay. The amount of back pay lost since termination, less any compensation received from other sources, cannot be determined without evidence. Since nothing in the record indicates that the court heard such evidence, an evidentiary hearing pursuant to § 10-151(f) will be necessary.
Id., 419. Based on the record, the court cannot make an order with respect to back pay.
Mihalakos, J.